

**IN THE CIRCUIT COURT**
**COFFEE COUNTY TENNESSEE**

COPY
FILED
JUL 3 0 2013
CIRCUIT COURT
COFFEE COUNTY, TN
HEATHER HINDS DUNCAN, CLERK
TIME _____ AM/PM

| | |
|---|---|
| ANTHONY DAVID TEAL, ONETA KAY TEAL | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) ) |
| COFFEE COUNTY BANK | ) ) |

Civil Action: 40525

Jury Demand

### VERIFIED COMPLAINT

Anthony David Teal and Oneta Kay Teal, by and through counsel, and for their Complaint state as follows:

### PARTIES

1. Anthony David Teal and Oneta Kay Teal ("Plaintiffs") are, at all times mentioned herein, residents of Morrison, Coffee County, Tennessee.

2. Coffee County Bank ("CCB") is a commercial banking institution with its main offices located at 2070 Hillsboro Blvd. Manchester, Tennessee 37355. Its registered agent for service of process is: Ewing J. Threet, 2070 Hillsboro Blvd., Manchester, TN 37355.

### COUNT I
### WRONGFUL FORECLOSURE-212 GOTTA MILK LANE, MORRISON, TN

3. On July 26, 2013 CCB conducted a foreclosure of 212 Gotta Milk Lane, Morrison, TN ("Gotta Milk Lane Property") pursuant to a deed of trust dated December 14, 2005 and recorded with the Coffee County Registry of Deeds in Book 670, Page 782 between Plaintiffs as the mortgagor and CCB as mortgagee. (Exhibit 1).

1

Case 4:13-cv-00051-CLC-SKL   Document 1-1   Filed 08/01/13   Page 1 of 46   PageID #: 4

4. At the time of the foreclosure there was allegedly 3 outstanding loans to CCB allegedly secured by the Gotta Milk Lane Property.

5. CCB foreclosed upon one loan which allegedly had an amount due as of July 26, 2013 of $225,730.13. Plaintiffs were never provided with a full accounting. (Exhibit 2).

6. CCB placed a credit bid at the foreclosure for $400,000.

7. CCB was only entitled to credit bid up to the amount owed on said loan.

8. CCB did not have certified funds for the difference between what it was owed ($225,730.13) and the amount of its credit bid ($400,000).

9. CCB did not have the original note at the foreclosure.

10. CCB received a cash bid at the foreclosure sale from a Mr. Fred Adams. Because CCB was only allowed to bid a credit bid up to the amount owed on the Note upon which they were foreclosing Plaintiffs' equity of redemption their bid is void and the property should go to the next highest bidder.

11. The foreclosure is void.

12. Plaintiffs have suffered damages as a direct and proximate result of the conduct of the Defendants.

## COUNT II
### WRONGFUL FORECLOSURE 630 TEAL ROAD, MORRISON, TN

13. Plaintiffs re-allege and reaffirm all prior paragraphs 1-12 above as if set forth fully herein.

14. 630 Teal Road is owned in fee simple by Plaintiff Tony Teal ("Tony") who owns 1/3 interest and his brother Ronnie Teal ("Ronnie") who owns 2/3 interest pursuant to a Deed dated July 27, 2009.(Exhibit 3).

2

15. On August 24, 2009 Katherine Teal, Tony's and Ronnie's mother signed a Promissory Note to CCB in the amount of $97,500. (Exhibit 4).

16. On August 24, 2009 Tony and Ronnie signed a Deed of Trust to secure Katherine Teal's promissory note to CCB which Deed of Trust is recorded with the Coffee County Registry of Deeds in Book 795, Page 281.

17. The Deed of Trust states: "Given to secure a line of credit from Coffee County Bank which will be available to Katherine Teal in the amount of Ninety-Seven Thousand Five Hundred & NO/100 ($97,500) Dollars, which will be maintained after the date of this note, but in no event longer than September 3, 2010, unless extended or modified, and subject to no adverse change in the financial condition of Katherine Teal." (Exhibit 5).

18. There was no extension or modification on or before September 3, 2010 at which time the Note became unsecured. CCB has not provided a full account for this loan.

19. On July 26, 2013 CCB conducted a foreclosure for Tony's 1/3 interest of 630 Teal Road, Morrison, TN ("Teal Road Property") pursuant to the Deed of Trust dated August 24, 2009. (Exhibit 1).

20. On July 26, 2013 Ronnie was in bankruptcy thereby preventing CCB from foreclosing on his 2/3 interest.

21. At the time of foreclosure this property was unsecured.

22. CCB placed a credit bid at the time of the foreclosure

23. CCB did not have the original note at the foreclosure.

24. The foreclosure is void.

25. Plaintiffs have suffered damages as a direct and proximate result of the conduct of the Defendants.

## COUNT III
## BREACH OF CONTRACT FOR 212 GOTTA MILK LANE, MORRISON, TN

3

26. Plaintiffs re-allege and reaffirm all prior paragraphs 1-25 above as if set forth fully herein.

27. Plaintiffs hereby bring a claim for Breach of Contract against CCB for breach of Non-Uniform Covenant contained in paragraph 22 of the Deed of Trust contract between Plaintiffs and CCB recorded with the Coffee County Registry of Deeds in Book 670, Page 782.

28. Paragraph 22 of the above-captioned deed of trust contains a condition precedent to foreclosure and states:

> Acceleration: Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. THE NOTICE SHALL FURTHER INFORM BORROWER OF THE RIGHT TO REINSTATE AFTER ACCELERATION AND THE RIGHT TO BRING A COURT ACTION TO ASSERT THE NON- EXISTENCE OF A DEFAULT OR ANY OTHER DEFENSE OF BORROWER TO ACCELERATION AND SALE. (Emphasis added).

29. The Notice of acceleration failed to notify Plaintiffs that they could bring a court action to assert the non-existence of a default or any other defenses to acceleration and sale.

30. As a direct and proximate result of CCB's breach of contract, Plaintiffs have suffered damages, including the loss of her home and the value thereof.

31. The failure of CCB to comply with a condition precedent to foreclosure renders the foreclosure null and void.

32. Plaintiffs thus demand an award of actual, compensatory and punitive damages.

4

## COUNT IV
### (Rescission—Mistake—Void Agreement/Contract Reformation)

33.     Plaintiffs incorporate by reference each and every allegation contained in the preceeding paragraphs of this Complaint.

34. The Restatement (Second) of Contracts, §17 states that "the formation of a contract requires a bargain in which there is a manifestation of mutual assent. . ." American Law Institute, Restatement (Second) of Contracts, §17(1).

35. The bargain between the parties is often referred to as the "meeting of the minds." See, e.g., American Law Institute, Restatement (Second) of Contracts, §17, comment 2. 120.  The mistake or missing of the minds does not have to be mutual. A single party mistaken justifies the voiding or rescinding of the contract.

36.     The Restatement (Second) of Contracts, §153 states: Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in §1547, and (a) The effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) The other party had reason to know of the mistake or his fault caused the mistake.

37.     The first requirement "is compelled by the rule that a meeting of the minds must occur in order to create a contract. Where one party misunderstands, or otherwise makes a mistake that goes to the substance of the agreement into which it enters, no meeting of the minds occurs, and thus, no contract exists." Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1291 (11th Cir. 1998).

5

38.     The Plaintiffs believed they were entering into a modification after Bankruptcy

which extended the term of their loan regarding the $215,000 loan on 212 Gotta Milk Lane,

Morrison, TN, because the modification agreement specifically states that it will extend the

maturity date on the loan through February 20, 2012.  The extension of time was necessary

for this modification because the loan was being reaffirmed from Bankruptcy. (Exhibit 6).

39.     However, despite the modification agreement specifically stating that the term

was being extended it was actually April 15, 2013 to Febraury 20, 2012.

40.     A unilateral mistake merits reformation of the underlying contract where the

"inequitable conduct of the other party induces the mistake." *City of Lawrenceville v. Richo*

*Elect. Inc.*, 174 Fed. Appx. 491, 494 (11th Cir. 2006), quoting *Prince v. Friedman*, 202

GA. 136 (Ga. 1947).

41.     In this case, the Defendant drafted the agreement.  Plaintiffs were never given any

documentation for the loans they signed and therefore they had no way of knowing that the

date on the modification agreement actually decreased the maturity date by a year.

42.     Plaintiffs, having just been discharged in Bankruptcy would never have signed a

modification agreement which decreased the time they had until the maturity of the loan.

43.     The Plaintiffs in this action executed their Loan documents based on the mistaken

belief that they were entering into a modification agreement that extended the maturity date

of their loan because that's what the document said it did when in actuality it decreased the

maturity date by more than a year.

44.     Because of this mistake, the Plaintiffs' benefit from their Loan agreement is far

less than they thought they would receive.

45.     This mistake was not a future contingency, but a reality present at the contract

6

formation: the Defendants knew the modification agreement lessened the time from the signing of the modification agreement to maturity than the loan that was being modified.

46.     Based on the material mistake in their formation, Plaintiffs are therefore entitled to an order of this Court rescinding the Loan and/or declaring the Loan void, invalid and unenforceable. Plaintiffs gave timely notice of rescission to Defendant in writing pursuant to a Temporary Restraining Order filed in the U.S. District Court for the Eastern District of Tennessee.

47.     In addition, Plaintiffs request restitution and damages.

## COUNT V
## QUIET TITLE

48. Plaintiffs reaffirm and re-allege paragraphs 1-47 hereinabove as if set forth more fully herein below.

49. Plaintiffs hereby bring a claim to quiet title to the Property located at 212 Gotta Milk Lane, Morrison, TN

50. The Plaintiffs are the owners of a parcel of land with the buildings thereon at 212 Gotta Milk Lane, Morrison, TN. The Defendant claimed possession of the Property at the time of the foreclosure auction sale of Plaintiffs' property.

51. By sale at public auction on July 26, 2013 Defendant sold and conveyed the premises to CCB.

52. Plaintiffs have suffered damages as a direct and proximate result of the conduct of the Defendants.

## COUNT VI
## (Fraud in the Inducement concerning making of the loans to Defendant)

7

53. Plaintiffs reaffirm and re-allege paragraphs 1-52 hereinabove as if set forth more fully herein below.

54. Under Tennessee law, a Plaintiff must prove five elements to sustain a claim of fraud in the inducement of a contract: (1) [the existence of] a false statement concerning a fact material to the transaction; (2) knowledge of the Statements falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance. Blackburn & McCune, PLLC, 2010 WL 2670816, at *11 (quoting Lamb, 26 S.W.3d at 630).

55. Under Tennessee law, the fraudulent inducement of a contract invalidates the contract because there is no meeting of the minds and illusory consideration. *Seaton v. Lawson Chevrolet-Mazda, Inc.*, 821 S.W.2d 137 (Tenn.1991); *Dozier v. Hawthorne Development Co.*, 37 Tenn. App. 279, 262 S.W.2d 705 (1953).

56. CCB fraudulently induced the Plaintiffs into reaffirming the $215,000 loan after bankruptcy by leading them to believe that the maturity date was being extended whereby they would have more time to become financially stable again after bankruptcy.

57. CCB misrepresented the modification terms of the loan to Plaintiffs.

58. CCB intended to induce reliance on their statement that Plaintiffs term would be extended and that a modification would be able to do that so that the so that the Plaintiffs didn't have to present a reaffirmation agreement to the bankruptcy court which would never have approved reaffirmation based on the loans CCB had Plaintiffs sign after bankruptcy.

59. Plaintiffs has been injured by the actions of the Defendant.

## COUNT VII
### Intentional, Fraudulent and Negligent and/or Reckless Misrepresentation

60. Plaintiffs reaffirm all prior paragraphs herein above as if set out here in full.

61. The elements for Fraudulent misrepresentation are (1) the Defendants made a representation of fact; (2) the representation was false; (3) the representation related to a material fact; (4) the representation was made knowingly, recklessly or without a belief in its truth; (5) the Plaintiff acted reasonably in relying on the misrepresentation; and (6) the Plaintiff suffered damages as a result. Metropolitan Government of Nashville & Davidson County v. McKinney, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992).

62. Negligent Misrepresentation the elements of which are (1) the Defendant, acting in the course of its business, profession or employment, or in a transaction in which it has a pecuniary interest, (2) supplies faulty information meant to guide others in their business transactions and (3) the Defendant fails to exercise reasonable care in obtaining or communicating the information, (4) on which the Plaintiff justifiably relies. Williams v. Berube & Assoc., 26 S.W.3d 640 (Ten. App. 2000).

63. Under Tennessee law, in order to recover for negligent misrepresentation, the plaintiff must show that the defendants supplied false information for the guidance of the other in their business transactions; that the plaintiff justifiably relied on the information; and that the defendants failed to exercise reasonable care or competence in obtaining or communicating the information. *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997).

64. Reckless and intentional misrepresentation both fall within the definition of fraudulent misrepresentation under Tennessee law.

65. In order to show that a fraudulent misrepresentation has occurred under Tennessee law, the plaintiff must prove that the defendants knowingly or recklessly made a

9

misrepresentation relating to an existing or past fact; that the plaintiff reasonably relied on the misrepresentation; and that the plaintiff suffered damages as a result. *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998); *Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670 (Tenn. Ct. App. 1993). *Accord Tschira v. Willingham*, 135 F.3d 1077, 1086 (6th Cir. 1998)(applying Tennessee law). Such a claim may also be proven by showing "the concealment or nondisclosure" of a known fact when there is a duty to disclose.

66. CCB knowingly or recklessly made a misrepresentation relating to an existing fact when they stated that the modification agreement would extend Plaintiffs loan term; when they lead Plaintiffs to believe that the 630 Teal Road was secured; when they provided Plaintiffs with documentation with numerous errors which go to the heart of the contracts.

67. CCB knowingly made misrepresentations in order to gain a financial benefit at the expense of Plaintiffs whereby CCB knew that the Plaintiffs would not be able to comply with the terms of the modification agreements after Plaintiffs bankruptcy and that CCB would swoop in and take the property in foreclosure.

68. CCB knowingly misrepresented to Plaintiffs that certain loans were secured when in fact they were not.

69. CCB knowingly misrepresented to Plaintiffs that certain property was cross-collaterized when in fact it was not.

70. Plaintiffs reasonably relied on this misrepresentation which reliance caused Plaintiffs to lose their home and properties upon which CCB alleges they have a security.

10

71. CCB knowingly made this misrepresentation in order to gain a financial benefit at the expense of Plaintiffs.

72. As a result of the misrepresentations by CCB, Plaintiffs have been damaged.

## COUNT VIII
## VIOLATION OF 15 U.S.C. § 1635(b)

73. Plaintiff re-alleges all prior paragraphs 1- 72 herein above as if set out here in full.

74. 15 U.S.C. § 1635(b) (emphasis added). When an obligor exercises his right to rescind as defined in § 1635(a)—that is, as Regulation Z states, when he notifies the creditor by mail, telegram, or other means of written communication that he is rescinding—he is free of any liability for payments, the security interest —becomes void, and the creditor incurs an obligation to return money or property given. As with § 1635(a), there is no mention of filing a suit at law or equity. Rather, § 1635(b) states that the creditor must return money or property —[w]ithin 20 days after receipt of a notice of rescission—not within twenty days of a court order stating that the obligor is entitled to rescind.

75. Additional support for the proposition that rescission occurs upon transmittal of valid written notice is also found in § 1635(f). That section, which establishes the three-year limitation, makes no mention of filing a suit or bringing a claim:

76. Regulation Z uses similar language, except that it refers to —[w]hen a consumer rescinds a transaction, as opposed to —when an obligor exercises his right to rescind. 12 C.F.R. §§ 1026.15(d), 1026.23(d) (stating that the —security interest . . . becomes void and that the —creditor shall return money or property given). The reference to a consumer rescinding the transaction—as opposed to a court granting rescission—further supports the view that rescission occurs upon transmission of valid written notice.

11

77. Plaintiffs properly rescinded the three loans allegedly secured by Plaintiff's residential property when they gave notice of rescission pursuant to a request for Temporary Restraining Order filed in their Federal Lawsuit against CCB which case was filed on March 11, 2013 within the three year period allowed for rescinding the loans.

## VIOLATION OF 11 U.S.C. § 524

78. Plaintiffs reaffirm and re-alleges all prior paragraphs 1- 77 herein above as if set out here in full.

79. CCB caused Plaintiffs to sign modification agreements and reaffirmation of notes after the Plaintiffs were discharged in Bankruptcy in violation of 11 U.S.C. § 524 regarding the notes upon which they foreclosed for 212 Gotta Milk Road and 630 Teal Road.

80. CCB caused Plaintiffs to sign modification agreements and reaffirmation of the debt after Plaintiffs were discharged in Bankruptcy in violation of 11 U.S.C. § 524 regarding various other alleged loans which Plaintiffs allegedly have with CCB.

81. CCB did not seek court approval prior to seeking reaffirmation from Plaintiffs.

82. As a result of violation of 11 U.S.C. § 524 Plaintiffs have been damaged.


## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray this Court will enter judgment against Defendant and as follows:

a.      For an order compelling said Defendant to transfer all right, title and interest in the properties, the subject of this litigation, to Plaintiffs and release any and all encumbrances from the properties;

b.      For an order awarding Plaintiffs general damages according to proof;

12

c.   For an order awarding Plaintiffs compensatory damages according to proof;

d.   For an order awarding Plaintiffs actual damages according to proof;

e.   For an order awarding Plaintiffs special damages according to proof;

f.   For an order awarding Plaintiffs exemplary and punitive damages in the amount of

$1,000,000.00

g.   For an order awarding Plaintiffs their reasonable costs of suit;

h.   For an order for statutory damages;

i.   For an order for treble damages where allowed by law;

j.   For an award of Attorney's fees;

k.   For an order for an award of $5,000,000 for pain and suffering;

l.   For pre-judgment interest on all damages award;

m.   For such other relief that the Court or jury deems just and equitable.

### DEMAND FOR JURY TRIAL

Respectfully submitted,

Carol A. Molloy, Esq. BPR#024915
6724 Buford Station Road
Lynnville, TN 3842
(931) 527-3603 Phone
(931) 527-0382 Fax

13

## VERIFICATION

We, Anthony David Teal and Oneta Kay Teal, individually, are the Plaintiffs in the above-entitled action. We have read the foregoing and know the contents thereof. The same is true of my own knowledge, except as to those mattes which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Giles County, Tennessee.

Dated: 7/30/13

_Anthony David Teal_
Anthony David Teal

_Oneta Kay Teal_
Oneta Kay Teal, Individually

Sworn to and subscribed before me this 30th day of July, 2013.

_____
Notary Public
My Commission Expires: 3/19/14

CAROL A. MOLLOY
STATE OF TENNESSEE NOTARY PUBLIC
GILES COUNTY

# EXHIBIT 1

This instrument prepared by:
Alec Garland, Attorney at Law
117 South Spring Street
Manchester, Tennessee 37355

MAXIMUM PRINCIPAL INDEBTEDNESS
for Tennessee recording tax
purposes is $ 215,000.00

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on December 14, 2005. The grantors are ANTHONY TEAL and wife, ONETA K. TEAL ("Borrower"). The Trustee is Kenneth Kirby ("Trustee"). The beneficiary is Coffee County Bank which is organized and existing under the laws of the State of Tennessee, and whose address is 301 Murfreesboro Highway, Manchester, Tennessee 37355, ("Lender"). Borrower owes Lender the principal sum of Two Hundred Fifteen Thousand (U.S. $215,000.00) Dollars. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for Thirty Five (35) monthly payments of $1,700.00 each, beginning January 14, 2006, with a Thirty Sixth and final balloon payment of $205,864.47 due and payable on December 14, 2008. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; (c) all obligations that Borrower now owes to Lender, or which may later arise, including, but not limited to other notes or liabilities for overdrafts on deposit accounts; and (d) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the Sixth Civil District of Coffee County, Tennessee, described as follows, to wit:

Beginning on an iron stake in the South margin of Rigney Road in old fence and running thence South 03° 30' West, 711.5 feet with old fence to a rock in Harrell corner; thence North 86° 00' West, 2,088 feet with Harrell line to an iron stake at post oak stump, the southeast corner of a 42 acre trucker tract; thence North 86° 30' West, 1,479 feet with Harrell line to the center of Mud Creek; thence running down the center of Mud Creek the following bearings and distances: North 13° 32' West, 94 feet; thence South 82° 00' East, 145.5 feet; thence North 50° 52' East, 54 feet; thence North 04° 52' East, 105 feet; thence North 57° 18' West, 65 feet; thence North 34° 28' West, 85 feet; thence North 60° 38' West, 96 feet; thence North 14° 08' West, 59.5 feet; thence North 33° 40' East, 80 feet; thence South 83° 55' East, 110 feet; thence North 79° 37' East, 52 feet; thence North 45° 55' East, 57 feet; thence North 20° 00' East, 216 feet; thence North 46° 00' East, 86 feet to an agreed on iron stake by Walter McMahan and Rigney; thence North 09° 00' East, 678 feet with the agreed on line of McMahan and Rigney to a rock in old fence corner; thence South 81° 30' East, 1,185 feet with Rowland McMahan line to an iron stake; thence North 88° 56' East, 475 feet with fence and Harner line to an iron stake in fence corner of Rigney; thence South 21° 00' East, 410 feet with a new line of Rigney's to an iron stake; thence South 89° 37' East, 578 feet with Rigney's line to an iron stake in the west margin of Rigney Road; thence South 37° 00' East, 141 feet with the west margin of Rigney Road to an iron stake; thence South

58° 35′ East, 100 feet with the southwest margin of Rigney Road to an iron stake; thence South 64° 25′ East, 190 feet with the southwest margin of Rigney Road to an iron stake; thence South 59° 00′ East, 410 feet with the south margin of Rigney Road to an iron stake; thence South 71° 48′ East, 110.9 feet with the south margin of Rigney Road to the beginning. Containing 94.0 acres, more or less, according to a survey by Earl Smith dated January 9, 1979.

And being the same property conveyed to Anthony Teal and wife, Mrs. Oneta K. Teal by deed from Clayborne S. L. Rigney and wife, Willene Orrick Rigney, dated March 16, 1979 and recorded in Warranty Deed Book 169, page 111, Register's Office of Coffee County, Tennessee.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. **Funds for Taxes and Insurance.** Lender reserves the right to require Borrower to escrow funds for taxes and insurance; however, on written request, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. §2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.
The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including

CCB(Teal)_000511

Lender if Lender is such an institution) or in any Federal Home
Loan Bank. Lender shall apply the Funds to pay the escrow items.
Lender may not charge Borrower for holding and applying the Funds,
annually analyzing the escrow account, or verifying the Escrow
Items, unless Lender pays Borrower interest on the Funds and
applicable law permits Lender to make such a charge. However,
Lender may require Borrower to pay a one-time charge for an
independent real estate tax reporting service used by Lender in
connection with this loan, unless applicable law provides
otherwise. Unless an agreement is made or applicable law requires
interest to be paid, Lender shall not be required to pay Borrower
any interest or earnings on the Funds. Borrower and Lender may
agree in writing, however, that interest shall be paid on the
Funds. Lender shall give to Borrower, without charge, an annual
accounting of the Funds, showing credits and debits to the Funds
and the purpose for which each debit to the Funds was made. The
Funds are pledged as additional security for the sums secured by
this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be
held by applicable law, Lender shall account to Borrower for the
excess Funds in accordance with the requirements of applicable law.
If the amount of the Funds held by Lender at any time is not
sufficient to pay the Escrow Items when due, Lender may so notify
Borrower in writing, and, in such case Borrower shall pay to Lender
the amount necessary to make up the deficiency. Borrower shall
make up the deficiency in no more than twelve monthly payments, at
Lender's sole discretion.

Upon payment in full of all sums secured by this Security
Instrument, Lender shall promptly refund to Borrower and Funds held
by Lender. If, under paragraph 21, Lender shall acquire or sell
the Property, Lender, prior to the acquisition or sale of the
Property, shall apply any Funds held by Lender at the time of
acquisition or sale as a credit against the sums secured by this
Security Instrument.

3. **Application of Payments.** Unless applicable law provides
otherwise, all payments received by Lender under paragraphs 1 and
2 shall be applied; first, to any prepayment charges due under the
Note; second, to amounts payable under paragraph 2; third, to
interest due; fourth, to principal due; and last, to any late
charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes,
assessments, charges, fines and impositions attributable to the
Property which may attain priority over this Security Instrument,
and leasehold payments or ground rents, if any. Borrower shall pay
these obligations in the manner provided in paragraph 2, or if not
paid in that manner, Borrower shall pay them on time directly to
the person owed payment. Borrower shall promptly furnish to Lender
all notices of amounts to be paid under this paragraph. If
Borrower makes these payments directly, Borrower shall promptly
furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority
over this Security Instrument unless Borrower; (a) agrees in
writing to the payment of the obligation secured by the lien in a
manner acceptable to Lender; (b) contests in good faith the lien
by, or defends against enforcement of the lien in, legal
proceedings which in the Lender's opinion operate to prevent the
enforcement of the lien; or (c) secures from the holder of the lien
an agreement satisfactory to Lender subordinating the lien to the
Security Instrument. If Lender determines that any part of
Property is subject to a lien which may attain priority over this
Security Instrument, Lender may give Borrower a notice identifying
the lien. Borrower shall satisfy the lien or take one or more of
the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the
improvements now existing or hereafter erected on the Property
insured against loss of fire, hazards included within the term
"extended coverage" and any other hazards including floods or

flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair in not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damages to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgement could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in the Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture

CCB(Teal)_000513

or to enforce laws or regulations), the Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, or any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice

by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall

notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given no Borrower or Lender when given as provided in this paragraph.

15.  **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16.  **Borrower's Copy.** Borrower shall be given one conformed

BK 7670 PG 787
CCB(Teal)_000515

copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date of the notice is delivered or mailed within which Borrower may pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default or any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees; and (d) takes such action as Lender may reasonably require to assure that the lien or this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Services unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substance that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property

CCB(Teal)_000516

is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environment Law.

As used in this paragraph 20, "Hazardous Substances" are those substance defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration: Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in paragraph 14, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this paragraph 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

23. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance

CCB(Teal)_000517

of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. **Waiver.** Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

_Anthony Teal_
Anthony Teal

_Oneta K. Teal_
Oneta K. Teal

STATE OF TENNESSEE }
COUNTY OF COFFEE }

Personally appeared before me, the undersigned Notary Public, the within named bargainors, ANTHONY TEAL and wife, ONETA K. TEAL, with whom I am personally acquainted, and who acknowledged that they executed the within instrument for the purposes therein contained.

WITNESS my hand this the 14th day of December, 2005.

_Lisa Newlin_
Notary Public

My Commission Expires: ___4-9-2007___



State of Tennessee, County of COFFEE
Received for record the 20 day of
DECEMBER 2005 at 11:05 AM. (RECH 1137267)
Recorded in official records
Book T670 Pages 782- 790
State Tax $ 543.75 Clerks Fee $ 1.00,
Recording $ 47.90, Total $ 292.85,
Register of Deeds ELLEN P. VAUGHN
Deputy Register ELLEN VAUGHN

CCB(Teal)_000518

# EXHIBIT 2

| | |
|---|---|
| From: | Hill, Lynda M. <lhill@fbtlaw.com> |
| Sent: | Thursday, June 27, 2013 2:54 PM |
| To: | Carrol Molloy |
| Subject: | RE: Requests for information |

Carol,

Here is the additional information you requested regarding 630 Teal Road and Gotta Milk Lane properties:

1. 630 Teal Road - Loan No. 16866651 – There is currently no amount that can bring the loan current at this time because, according to the express terms of the loan, it went into default upon the death of the borrower, Mrs. Teal. Even if it could have been brought current, because it is an asset of the estate, it has to be disposed of in some manner through the Probate Court to satisfy claims against the estate. That being said, if you will present to the Probate Court an acceptable plan for sale/ payoff with funds from a different lender before the currently set foreclosure date, CCB is willing to postpone the foreclosure for a modest period of time to allow for the execution of any plan presented that is acceptable to CCB and the Probate Court.

2. 672 Rigney Lane/212 Gotta Milk Lane

(1) Loan No. 716242166 - This loan cannot be brought current because the note has matured. The Teals must pay it off in full.

(2) Loan No. 716242167 - This loan cannot be brought current because the note has matured. The Teals must pay it off in full.

(3) Loan No. 716242168 – This loan has not yet matured (maturity date of April 30, 2015); however, bringing it current would not prevent foreclosure. The Bank is foreclosing on Loan No (1). Only if Loans (1) and (2) are paid off, would brining this loan current have any impact on the foreclosure proceedings.


-Lynda

Lynda Moore Hill
Member | Frost Brown Todd, LLC

The Pinnacle at Symphony Place | 150 3rd Avenue South, Suite 1900 | Nashville, TN 37201
615.251.5559 Direct | 615.251.5550 Main | 615.251.5551 Fax


**From:** Carrol Molloy [mailto:cmolloy5@gmail.com]
**Sent:** Friday, June 21, 2013 2:55 PM
**To:** Hill, Lynda M.
**Subject:** RE: Requests for information

That's fine.

1

fy bank contact is gone til Monday and I'm out now too. I'll follow up with a response early next week.

ynda M. Hill
rost Brown Todd LLC
i15) 251-5589


----Original Message-----
rom: Carrol Molloy [cmolloy5@gmail.com]
eceived: Friday, 21 Jun 2013, 2:12pm
o: Hill, Lynda M. [lhill@fbtlaw.com]
ubject: RE: Requests for information

hanks Lynda.

an you get an amount that the bank wants to bring both the 630 Teal Road, and the Gotta Milk Lane properties
urrent?

arol

rom: Hill, Lynda M. [                    ]
ent: Friday, June 21, 2013 1:13 PM
o: Carol Molloy
ubject: Requests for information


arol,

Iere is the information you requested.

. Attached is the August 2009 note on the Teal Road property.

. Payoff info through June 30, 2013, on the 4 outstanding loans Teal loans:

1) Loan No. 716242166 - secured by 672 Rigney Lane/Gotta Milk Lane – payoff is $224,627.28 with a per
iem of $31.51.

2) Loan No. 716242167 - secured by 672 Rigney Lane/Gotta Milk Lane - payoff is $155,211.52 with a per
iem of $22.74.

3) Loan No. 716242168 - secured by 672 Rigney Lane/Gotta Milk Lane - payoff is $85,226.05 with a per diem
f $18.47.

4) Loan No. 16866651 - secured by 630 Teal Road – payoff is $118,059.36 with a per diem of $20.82.

Regards,

2

**Carrol Molloy**

| | |
|---|---|
| **From:** | Hill, Lynda M. <lhill@fbtlaw.com> |
| **Sent:** | Thursday, June 27, 2013 2:54 PM |
| **To:** | Carrol Molloy |
| **Subject:** | RE: Requests for information |

Carol,

Here is the additional information you requested regarding 630 Teal Road and Gotta Milk Lane properties:

1.  630 Teal Road - Loan No. 16866651 — There is currently no amount that can bring the loan current at this time because, according to the express terms of the loan, it went into default upon the death of the borrower, Mrs. Teal. Even if it could have been brought current, because it is an asset of the estate, it has to be disposed of in some manner through the Probate Court to satisfy claims against the estate. That being said, if you will present to the Probate Court an acceptable plan for sale/ payoff with funds from a different lender before the currently set foreclosure date, CCB is willing to postpone the foreclosure for a modest period of time to allow for the execution of any plan presented that is acceptable to CCB and the Probate Court.

2.  672 Rigney Lane/212 Gotta Milk Lane

   (1) Loan No. 716242166 - This loan cannot be brought current because the note has matured. The Teals must pay it off in full.

   (2) Loan No. 716242167 - This loan cannot be brought current because the note has matured. The Teals must pay it off in full.

   (3) Loan No. 716242168 — This loan has not yet matured (maturity date of April 30, 2015); however, bringing it current would not prevent foreclosure. The Bank is foreclosing on Loan No (1). Only if Loans (1) and (2) are paid off, would brining this loan current have any impact on the foreclosure proceedings.

-Lynda

Lynda Morgan, Esq.
Member | Frost Brown Todd LLC

The Pinnacle at Symphony Place | 150 3rd Avenue South, Suite 1900 | Nashville, TN 37201
615.251.5590 Direct | 615.251.5550 Main | 615.251.5551 Fax

**From:** Carrol Molloy [mailto:cmolloy5@gmail.com]
**Sent:** Friday, June 21, 2013 2:55 PM
**To:** Hill, Lynda M.
**Subject:** RE: Requests for information

That's fine.

1

# EXHIBIT 3

This instrument was prepared by:

Perrone & Young (PRY)

109 Westpark Drive, Suite 330

Brentwood, TN 37027

## QUIT CLAIM DEED

| ADDRESS NEW OWNER: | SEND TAX BILLS TO: | MAP / PARCEL NO. |
|---|---|---|
| | New Owner | Map 15 / Parcel 33 |

Ronnie K. Teal

1005 Johnnie Jarrell Road

Morrison TN 37357

State of Tennessee )

County of Coffee )

The actual consideration or value for this transfer, whichever is greater, is $0.00.

*Viola Katherine Teal*

Viola Katherine Teal

Personally appeared before me, sworn to and subscribed before me this 2/7 day of July 2009.

*Sue Ridner*

My commission expires:                          Notary Public

**SUE RIDNER**
**STATE OF TENNESSEE NOTARY PUBLIC**

**FOR AND IN CONSIDERATION** of love and affection and no monetary consideration, I Viola Katherine Teal, the "Grantor," do hereby quitclaim and convey unto Ronnie K. Teal, the "Grantee," his their heirs and assigns, all of my right, title and interest in and to the following described tract or parcel of land in Morrison, Coffee County, State of Tennessee, described as follows, to-wit:

**RECEIVED**

**JUL 3 1 2009**

COFFEE COUNTY
PROPERTY ASSESSOR

LAND in the 6th Civil District of Coffee County, Tennessee, being further described as follows, to-wit:

Beginning at an iron pin set in the north margin of Shady Grove Road at Smith's southeast corner, said pin also being the southwest corner of the property herein described; thence leaving said margin, N 09°

http://mail.google.com/mail/?ui=2&ik=f4838b7cf6&view=att&th=122adf8de9b350c2&att...   7/24/2009

52° 53" E, 562.55 feet to a point; thence N 08° 42' 22" E, 436.81 feet to a wood fence post; thence S 83° 30' 11" E, 398.58 feet to an iron pin set in the west margin of Teal Road; thence with said margin, S 08° 10' 10" W, 453.82 feet to a point; thence S, 09°50'19" W 576.72 feet to a point at the northwest corner of the intersection of Shady Grove Road, N 79° 02' 48" W, 402.98 feet to the point of beginning, and containing 9.36 acres and being a portion of the property in Deed Book 234, Page 81 of the Register's Office for Coffee County, Tennessee.

BEING the same property conveyed to Riley K. Teal, Anthony Teal, and Ronnie K. Teal, as tenants in common, by deed from Calvin H. Williams, of record in Book W265, Page 322 – 324, Register's Office for Coffee County, Tennessee. The said Riley K. Teal having since died on March 18, 2009, being survived by his wife, Katherine Viola Teal, and two sons: Anthony Teal and Ronnie K. Teal, the only heirs at law of the decedent. The estate of Riley K. Teal was probated under Docket No. PW09-62 in the Chancery Court for Coffee County, Tennessee.

This is improved property known as:  630 Teal Road, Morrison, Tennessee, 37357.

This conveyance is subject to any and all zoning regulations, building restrictions and setback lines, easements, rights of way for public utilities, restrictive covenants, and encumbrances, if any, as may affect the property.

IN WITNESS WHEREOF, I have hereunto set my hand on this _____ day of July 2009.

GRANTOR:

VIOLA KATHERINE TEAL

STATE OF TENNESSEE )

COUNTY OF COFFEE )

Personally appeared before me, a notary public in and for said State and County, the within named Grantor, VIOLA KATHERINE TEAL, the bargainor, with whom I am personally acquainted (or upon the basis of satisfactory evidence presented to me), and who acknowledged that she executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and official seal at Manchester, Tennessee, this 2 7 day of July

Teal Deed 630 Teal Rd 090720.doc      Book W334  Page 782

2009.

NOTARY PUBLIC

My commission expires:

8-17-2009

BK/PG: W334/780-782

0900553B

| | | |
|---|---|---|
| 3 PGS : AL - QUITCLAIM DEED | | |
| GERALDINE BATCH: 24380 | | |
| 07/31/2009 - 01:00 PM | | |
| VALUE | | 0.00 |
| MORTGAGE TAX | | 0.00 |
| TRANSFER TAX | | 0.00 |
| RECORDING FEE | | 15.00 |
| DP FEE | | 2.00 |
| REGISTER'S FEE | | 0.00 |
| TOTAL AMOUNT | | 17.00 |

STATE OF TENNESSEE, COFFEE COUNTY
ELLEN P. VAUGHN
REGISTER OF DEEDS

# EXHIBIT 4

# MULTIPURPOSE NOTE AND SECURITY AGREEMENT

Borrower: "I", "Me" and "My" Means Each Borrower Below Jointly and Severally    Lender: "You" and "Your" Means The Lender, Its Successors and Assigns

| | | | |
|---|---|---|---|
| | | Officer No. | 18 |

| Katherine Teal | Coffee County Bank | Loan No. | ████9250 |
|---|---|---|---|
| | Main Office | Customer No. | |
| 548 Teal Road | P.O. Box 1109 | Renewal of | |
| Morrison, TN 37357 | Manchester, TN 37349 | Loan Date | **August 24, 2009** |
| | (931)-728-1975 | Maturity Date | September 03, 2010 |
| | | Loan Amount | $97,500.00 |

NOTE: For value received, I promise to pay to you, or any other holder, at the address above, the principal sum of:
Ninety Seven Thousand Five Hundred and 00/100 ................................................ Dollars ($ 97,500.00 )
together with interest at the rate of interest as provided below.

☐ Single Advance: I will receive all of this principal sum at one time. No additional advances will be made under this Note.
☒ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this Note. Future principal advances are contemplated.
   ☒ Conditions: The conditions for future advances are _____ UPON REQUEST _____
   ☐ Open-End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This option is subject
      to all other conditions and expires no later than _____
   ☒ Closed-End Credit: You and I agree that I may borrow up to the maximum amount of principal only one time (and subject to all other conditions).

INTEREST: Interest will accrue on a . Actual/365 Day _____ basis. I agree to pay interest on the principal balance owing from time to time as stated below. Each advance made to me under the terms of this Note will earn interest only from the date that I receive the advance. As provided for in this Note, the interest rate will apply to the outstanding principal balance that I owe. The amount of interest charged by you will not exceed the maximum rate of interest allowed by law.

☒ Fixed Rate: I agree to pay interest at the simple rate of 6.990 ___ % per year, from 08/24/2009 _____ until paid in full.
☐ Variable Rate: I agree to pay interest from _____ at the initial simple rate of _____ % per year. This rate may change as stated below.

PAYMENTS: I agree to pay this Note as follows:
THIS NOTE IS DUE ON DEMAND, IF NO DEMAND THEN:
This note is payable in 11 payments of all accrued interest monthly beginning October 03, 2009, plus a final payment consisting of the full amount of principal, all accrued interest, charges and fees remaining due and payable on September 03, 2010. e means estimated

POST MATURITY INTEREST: Interest all accrues after maturity on the unpaid principal balance of this Note at the same basis as interest accrues prior to maturity, unless a specific post-maturity interest rate is stated in the next sentence.
☒ If checked, interest will accrue at the rate of 18.00 % per year on the unpaid principal balance of this note paid at maturity, including maturity by acceleration. Borrower and Lender agree that any charges for failure to repay principal at maturity are not a penalty or interest, but are intended to compensate the Lender for expenses arising from such delinquency or default.

☒ LATE CHARGE: IF MY PAYMENT IS MORE THAN 15 DAYS LATE, I WILL PAY A LATE CHARGE EQUAL TO 5.000 % OF THE PAYMENT AMOUNT OR $5.00 WHICHEVER IS GREATER.

☐ ADDITIONAL CHARGES:
In addition to accrued interest, I agree to pay the following charges: _____
and these charges ☐ are ☐ are not included in the Loan Amount.

ADDITIONAL TERMS:

SECURITY: I give you a security interest in the property described below to secure the obligations of this Loan:
Secured by Deed of Trust of Record in the Coffee County Register of Deeds Office in TDB_____ , page_____ , Coffee County, Tennessee. Property located at 630 Teal Road, Morrison, TN 37357 and all improvements.

☒ If checked, this Note is secured by a separate:
Deed of Trust

☒ ALL DEBTS – THE ABOVE PROPERTY WILL ALSO SERVE AS SECURITY FOR ALL OF MY PRESENT AND FUTURE DEBTS TO YOU.

THE PURPOSE OF THE LOAN IS: For medical expenses.

GP - TN Rev. (1/31/09)                PAGE 1 OF 4

# ADDITIONAL TERMS OF THE NOTE AND SECURITY AGREEMENT

I ALSO AGREE TO THE FOLLOWING TERMS:

**1. DEFINITION:** "Loan" means this Note, Security Agreement, and Truth in Lending Disclosure, regardless of whether provided as an integrated document or separate documents; and any document referred to in the Note, Security Agreement, or Truth in Lending Disclosure is hereby incorporated by reference and made a part of the Loan. It also means any extensions, renewals, modifications, or substitutions of this Loan.

**2. PAYMENT:** Unless specifically stated otherwise in the payment of the Note, each payment I make will be applied first to any charges, costs, fees, or expenses I owe other than principal and interest, then to interest that is due, and finally to unpaid principal.

**3. MY OBLIGATION:** I understand and agree that my obligation to pay this Loan is separate and independent of any other person's obligation to pay it. I will still be obligated to pay this Loan even if you release any other person who has agreed to pay, extend new credit or renew or modify this Loan, or relinquish any right(s) you may have against me or any other person obligated to pay this Loan.

**4. MATURITY:** For purposes of this note the term "maturity" shall mean the following:
- If the note is a "demand" note, the date you make your demand or the date that payment of the note is accelerated by you, whichever is earlier;
- If the note is a "demand" note, with a stated alternate maturity date, the date of your demand or the alternative maturity date or the date that you accelerate payment of the note, whichever date is earlier; or
- In all other cases, the date set for the last regularly scheduled payment of principal or the date that you accelerate payment of the note, whichever date is earlier.

**5. SET-OFF:** You have the right to set-off my deposit accounts and any other rights that I may have to receive the payment of money from you. You may exercise your right of set-off without notice to me and without regard to the type or value of collateral or the existence of any guaranty or other agreement to pay this note. You will not be responsible for the dishonor of any check when that dishonor occurs as a result of your exercise of the right of set-off against my account.

**6. PURCHASE MONEY SECURITY INTEREST:** With respect to purchase money security interest arising under this agreement:
- Payments made on non-purchase money loans secured by this agreement will not be deemed applicable to any purchase money loans, and
- Payments made on any purchase money loan will be applied first to any non-purchase money portion of said loan, with the remaining balance to be applied to the purchase money obligations in the order in which the items of collateral were acquired. A purchase money loan means a loan used in whole or in part to acquire the collateral which secures the loan and any extension, renewal, consolidation of refinancings of such loans.

**7. ADDITIONAL SECURITY AND INDEBTEDNESS:** In addition to the collateral described on the face hereof, this Loan is secured by any additions, repairs, replacements, accessions, products or proceeds, including proceeds of any insurance payable as a result of loss or damage to the collateral, and any similar acquired collateral of the type specified. However, the security interest shall not attach to household goods not purchased with the proceeds of this loan or to other after-acquired consumer goods, with the exception of accessions, unless such after-acquired consumer goods are acquired within ten (10) days after you make this loan. Each present or future agreement securing debt I owe you will also secure the payment of this Loan, unless: (1) the property securing other debt is my principal dwelling and you fail to provide me and all other persons with ownership interest in the dwelling with a required notice of the right to rescind; or (2) the property securing other debt is household goods.

**8. WARRANTY OF TITLE:** I warrant to you that I own the collateral free and clear of liens or security interests, other than the security interest created hereunder and I will defend the collateral against any asserted claims or demands by other parties.

**9. COLLATERAL INSURANCE:** I agree at all times to keep the collateral insured against all insurable hazards in amounts equal to the full cash value of the collateral. Such insurance shall be in such companies as may be acceptable to you, with provisions satisfactory to you for payment of all losses thereunder to you as your interest may then appear, and, if required by you, I will deposit the policies with you. Any money received by you under said policies may be applied to the payment of any indebtedness secured hereby, whether or not due and payable, or at your option may be delivered by you to me for the purpose of repairing or restoring the collateral. I hereby assign to you all right to receive proceeds of insurance not exceeding the amounts secured by my loan, direct any insurer to pay all proceeds directly to you, and appoint you as my attorney-in-fact to endorse any draft or check made payable to me in order to collect the benefit of any such insurance.

If I fail to keep the collateral insured as required by you, or if I fail to furnish to you evidence of such insurance, I will be in default, and you may, at your option and discretion, and in addition to your other remedies at law, in equity or by contract, purchase such insurance. Provided, however, you are not obligated to pay any insurance premiums or carry any form of insurance on the collateral. If you purchase such insurance, I agree to reimburse you for the premium, plus accrued interest. My obligation to so reimburse you for the purchase of such insurance shall be secured by the collateral, and shall bear interest at the simple interest rate set forth in my loan documents or in effect at the time you purchase the insurance. At your option, I agree to either reimburse you on demand for the premium paid by you to purchase such insurance, or pay said sums in any manner of installments required by you in connection with the remaining payments outstanding pursuant to this my loan, to pay as a balloon payment at the maturity of my loan or to allow you to extend the maturity of my loan in order to provide for my reimbursement of you for the payment of the premium for such insurance. However, your action to reschedule my payments to provide for reimbursement of the premium you paid for such insurance shall not create a new obligation or satisfy or replace my original obligation, but shall be simply a continuation of my original obligation.

I understand the insurance that you purchase WILL NOT provide any form of liability insurance for my benefit or anyone claiming through me. You may obtain this insurance through one or more companies, which may be an insurance company used by me and such insurance will generally be more expensive than the insurance coverage I could voluntarily obtain from such insurance company.

If I obtain the required insurance on the ~~~~~~~~ discussed insurance has been purchased, I will be entitled to a refund the un~~~~~~~ premium for ~~~~~ purch~~~~ ~~~~ dated from the effective date of the required insurance that I purchase on the collateral.

I authorize you to forward any information that you deem necessary to third parties ~~~~~~ services in~~~~ to your rights and duties under this Loan, including but not limited to insurance monitoring and placement services.

**10. PRESERVATION OF COLLATERAL:** I will preserve and maintain the collateral and keep the collateral in good condition and repair and will allow you to inspect the collateral at any time. If I fail to pay any charges that I am obligated to pay to preserve or protect the secured property, I authorize you to make those payments on my behalf and add these payments to the unpaid principal balance of this note. These payments will then be secured by the property.

**11. TAXES:** I will pay all taxes and other encumbrances on the collateral promptly, and I will otherwise maintain the collateral free and clear of any liens, encumbrances or other security interests.

**12. SALE OF COLLATERAL (AND ASSUMPTION):** I will not sell, convey, lease or otherwise transfer the collateral or any part of it without first obtaining written consent from you. Unless you otherwise agree in writing, this Loan cannot be assumed by any person. If I attempt to transfer any interest in the collateral, including possession, I will be in default of this Loan.

**13. DEFAULT:** I will be in default of this Loan if any of the following events occur:
- I fail to make a required payment when due;
- I breach any promise I have made to you under the terms of this note, the security agreement (if applicable) or any other loan or agreement with you;
- Any representation, warranty, promise or statement that I have made to you proves to be for at the time it was made or given was) materially false or incorrect;
- I die, become insolvent, or initiate bankruptcy or similar proceedings, or am adjudged a bankrupt;
- Any of my property in which you have lien or security interest is attached or otherwise taken by another creditor, including any garnishment of my accounts with you;
- I fail to maintain insurance covering the collateral;
- The maturity of my indebtedness I owe to others is accelerated as a result of the occurrence of a default under this or any other agreement;
- You at any time believe that the prospect for repayment for any portion of the indebtedness secured hereby is significantly impaired.

**14. LENDER'S REMEDIES:** Upon default, you may at your option, do one or more of the following:
- You may, without notice, accelerate the maturity date of this note and require that all unpaid charges, interest and principal balances be immediately due and payable;
- You may exercise your right of set-off against any right I have to receive payment of money from you;
- You may exercise any rights you have under any other agreement which secures this note;
- You may demand additional security or obligors to insure repayment of this note.

**15. REMEDIES UNDER THE SECURITY AGREEMENT:** If I default, you may exercise all of the rights and remedies available to a secured creditor under the Uniform Commercial Code or other applicable federal or state law. I will be obligated to make the property available to you at a reasonably convenient place and time. I agree that you are then authorized to take possession of the collateral and sell it as provided under the terms of the Uniform Commercial Code or other applicable federal or state law. I agree that written notice sent to my address on the face of the note by first class mail ten (10) days in advance of any such sale will be reasonable notice.

**16. WAIVER:** To the extent permitted by law, I waive presentment, demand for payment, protest and notice of dishonor. No waiver of a default shall be deemed a waiver of any other or later default. If under the terms of this Loan, a security interest would be created in a principal dwelling owned by me or any other person as a home, you waive the security interest so created unless you have given an appropriate opportunity to rescind and the owner of the property has not exercised that right.

**17. PURCHASE MONEY LOAN:** If this is a purchase money loan, you may include the name of the seller on the check or draft for this loan.

**18. FINANCING STATEMENT:** I authorize you to file a financing statement describing the secured property and any other liens held by you. I represent and warrant that my exact legal name and address of legal residence is set forth on the first page of this Loan.

**19. SECURED BY REAL ESTATE OR RESIDENCE:** If this Loan is secured by real estate or a residence that is personal property, a default and your remedies for default will be determined by the terms of any separate document creating the security interest, applicable federal or state law, and, to the extent permitted by law and not contrary to the terms of the separate security document, by this Loan.

**20. ATTORNEY'S FEES AND COLLECTION COSTS:** In the event of default, I agree to pay all reasonable costs you incur to collect on this Loan, including attorney's fees, court costs, and other legal expenses.
~~~~ ~ ~~~~~ ~~~~ ~~~~~~~~~

**Notice of Furnishing Negative Credit Information**

You may report information about my loan account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report.

**Third Party Agreement**

I own the Property described in the Security section of this Note and Security Agreement and I agree to give you a security interest in that Property. I am not personally liable for payment of this debt. If the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. By signing, I agree to the terms of this Note and Security Agreement and acknowledge receipt of a complete copy of this Loan.

_____ (Seal)    _____ (Seal)
                     Date                                                Date

_____ (Seal)    _____ (Seal)
                     Date                                                Date

**CO-SIGNERS:** As a co-signer I agree that I must pay this note if it is not otherwise paid by Borrower when due. I understand that you may sue any co-signer separately or jointly, and you do not have to notify me if this note is not paid in a timely manner. The obligations of the co-signers executing this Loan shall not be affected by any discharge in bankruptcy granted to one or more Borrowers or co-signers of this Loan.

**Notice to Co-Signer**

You (the Co-Signer) are being asked to guaranty this debt. Think carefully before you do. If the Borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Bank can collect this debt from you without first trying to collect from the Borrower. The Bank can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This Notice is not the contract that makes you liable for the debt.

X _____          X _____
       Co-Signer Signature or Initials               Co-Signer Signature or Initials

File Copy

**FTC NOTICE**

IF APPLICABLE, ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**Signatures**

By signing under seal, I agree to the terms of this Loan and also acknowledge receipt of a copy of this Multipurpose Note and Security Agreement.

_Katherine Teal P.A. Anthony Teal_          8-24-07
BORROWER: Katherine Teal                      Date

_____
                                                Date

_____
                                                Date

_____
                                                Date

_____
                                                Date

_____
                                                Date

Co-signers:

_____
                                    Date

_____
                                    Date

**Guaranty:** By signing under seal, I unconditionally guarantee the payment of the note and any amounts agreed to be paid under the terms of the security agreement. I also agree that, to the extent applicable, all of the terms of this Loan will apply to me.

_____
                                    Date

_____
                                    Date

_____
                                    Date

_____
                                    Date

# File Copy

# EXHIBIT 5

## DEED OF TRUST

FOR AND IN CONSIDERATION OF ONE DOLLAR, to us paid, the receipt of which is hereby acknowledged, and other considerations hereinafter mentioned, we, **KATHERINE TEAL, ANTHONY TEAL, and RONNIE K. TEAL**, have this day bargained and sold, and do hereby transfer and convey, to Kenneth Kirby, Trustee, and his successors in trust, certain property in the Third Civil District of Coffee County, State of Tennessee, described as follows, to-wit:

Beginning at an iron pin set in the north margin of Shady Grove Road at Smith's southeast corner, said pin also being the southwest corner of the property herein described; thence leaving said margin, N 09° 52' 53" E, 562.55 feet to a point; thence N 08° 42' 22" E, 436.81 feet to a wood fence post; thence S 83° 30' 11" E, 398.58 feet to an iron pin set in the west margin of Teal Road; thence with said margin, S 08° 10' 10" W, 453.82 feet to a point; thence S 09° 50' 19" W, 576.72 feet to a point at the northwest corner of the intersection of Shady Grove Road and Teal Road; thence with the north margin of Shady Grove Road, N 79 ° 02' 48" W, 402.98 feet to the point of beginning and containing 9.36 acres and being a portion of the property in Deed Book 234, Page 81 of the Register's Office of Coffee County, Tennessee.

And being the same property conveyed to Riley K. Teal, Anthony Teal and Ronnie K. Teal by deed from Calvin H. Williams, dated September 8, 1998 and recorded on September 8, 1998 at 11:30 A.M. in Warranty Deed Book 265, page 322, Register's Office of Coffee County, Tennessee. Riley K. Teal is now deceased having died intestate in 2009. His estate is currently being probated in the Coffee County Chancery Court as Case No. PW09-62. At the time of his death, Riley K. Teal was survived by his wife, Viola Katherine Teal, and two children, Anthony Teal and Ronnie K. Teal, who were his only heirs at law. The said Viola Katherine Teal has quitclaimed her interest to Riley K. Teal, by Quitclaim Deed dated July 27, 2009 and recorded in Trust Deed Book 334, page 780, Register's Office of Coffee County, Tennessee.

TO HAVE AND TO HOLD, said property to the said Kenneth Kirby, Trustee, and his successors in trust, forever. We covenant that we are lawfully seized of said property, have a good right to convey it and that the same is unencumbered. We further covenant and bind ourselves, our heirs and representatives, to warrant and defend the title to said property, to the said Kenneth Kirby, Trustee, or his successors in trust, and assigns, forever, against the lawful claims of all persons.

This conveyance is made IN TRUST to secure the full, prompt and final payment of any and all indebtedness, including principal, interest, default charges, attorney fees and costs as may be provided in any instrument evidencing indebtedness, now or hereafter owed to the lender, either directly or indirectly, or as endorser or guarantor for others, and including the following:

Given to secure a line of credit from Coffee County Bank which will be available to Katherine Teal in the amount of Ninety-Seven Thousand Five Hundred & NO/100 ($97,500.00) Dollars, which will be maintained after the date of this note, but in no event longer than September

This Deed of Trust also secures repayment of any present or future debt owed by the undersigned to the lender, and any and all modifications, extensions or renewals of this or any other debts owed by the borrowers to the lender.

THE MAXIMUM PRINCIPAL INDEBTEDNESS UNDER THIS DEED OF TRUST FOR TENNESSEE RECORDING TAX PURPOSES IS NINETY-SEVEN THOUSAND FIVE HUNDRED & NO/100 ($97,500.00) DOLLARS.

Now, if we, the grantors herein shall pay the sums aforesaid when due, according to the terms of said note, then this instrument is to be of no further force or effect. But if we fail to pay said sums of money when due as aforesaid or any part of said sums, according to the terms above expressed then, upon such default, this conveyance remains in full force and effect and the said Trustee or his successor in trust is hereby authorized and empowered, upon giving notice as provided by Tennessee Code Annotated §§ 35-5-101 et seq, to sell said property at the courthouse door in said county, to the highest bidder for cash and free from equity of redemption, statutory right of redemption, homestead, dower and all other exemptions of every kind, which are hereby expressly waived, and the said Trustee, or his successor in trust is authorized to make a deed to the purchaser. The creditor may bid at any sale under this conveyance. We agree that the Trustee may at any time after default in payment of principal or interest, as each falls due respectively, enter and take possession of said property, and shall only account for net rents received.

And we agree to keep all buildings on said property insured in some reliable fire insurance company or companies for the amount of the insurable value, until the sum herein secured is fully paid, and to have the loss made payable on the policy to said Trustee for the benefit of the owners and holders of the debt herein secured. We agree to keep the improvements on said property in good repair and preservation and to pay all taxes and assessments and to pay them when due; and in case we fail to do either, the said Trustee, or the creditor herein secured may do either and charge the amount so expended as part of the debt herein secured.

In case of sale under this Deed of Trust, the proceeds will be applied by the Trustee:

First – to pay all the costs and charges of executing this trust, including attorney's fees and the expense of any litigation which may arise on account of the execution and enforcement of this trust.

Second – to pay said debt, or any balance thereof then remaining unpaid.

Third – The residue to be paid to us, the grantors herein or order.

And in case of death, absence, inability or refusal to act of the said Trustee at any time, when action under the foregoing powers and trusts may be required, the owner of the debt herein secured is hereby authorized to name and appoint a successor to execute this trust and the title here conveyed to Kenneth Kirby, Trustee, shall be vested in said successor.

In the event of a sale of said property under and by virtue of said trust, we, the grantors herein and all persons holding under us shall be and become the tenants at will of the purchaser of the same from and after the execution and delivery of a deed to such purchaser, said tenancy to be determined at the option of said purchaser upon five days written notice.

Dated this the 24th day of August, 2009.

*Katherine Teal BAA Anthony Teal*
Katherine Teal by Anthony Teal
pursuant to a Power of Attorney
of record in Trust Deed Book
795, page 277, Register's
Office of Coffee County,
Tennessee

*Anthony Teal*
Anthony Teal

*Ronnie K Teal*
Ronnie K. Teal

## ACKNOWLEDGEMENT BEFORE NOTARY PUBLIC

STATE OF TENNESSEE            )

COUNTY OF COFFEE             )

Personally appeared before me, the undersigned authority, a notary
public in and for the said county and state, the within named
ANTHONY TEAL, individually and as attorney-in-fact for KATHERINE
TEAL, and RONNIE K. TEAL, the bargainors, with whom I am personally
acquainted, and who acknowledged that they executed the within
instrument for the purposes therein contained.

Witness my hand and official seal the 24th day of August, 2009.

_____
NOTARY PUBLIC

My Commission Expires: 7-1-2013

*(Notary seal: L. BUSH STATE OF TENNESSEE NOTARY PUBLIC COFFEE COUNTY)*

BK/PG: T795/281-283
09008113
3 PGS : AL - TRUST DEED
ELLEN BATCH: 26097
11/13/2009 - 11:05 AM

Case 4:13-cv-00051-CLC-SKL  Document 1-1  Filed 08/01/13  Page 41 of 46  PageID #: 44

# EXHIBIT 6

This instrument prepared by:          MAXIMUM PRINCIPAL INDEBTEDNESS
Shawn C. Trail, Attorney              for Tennessee recording tax
GARLAND & TRAIL, LAW OFFICES          purposes increased by:
117 South Spring Street               $ 0.00
Manchester, Tennessee 37355

## MODIFICATION AGREEMENT

This agreement is between ANTHONY TEAL and wife, ONETA K. TEAL, hereinafter called borrower, and COFFEE COUNTY BANK, hereinafter called the lender, WITNESSETH: guarantee

WHEREAS, the lender has heretofore made a loan to the borrower in the principal amount of $215,000.00, evidenced by the borrower's note dated December 14, 2005 and a Deed of Trust of even date with the note, of record in Trust Deed Book 670, page 782, Register's Office of Coffee County, Tennessee; and

WHEREAS, the borrowers have requested the lender to modify certain provisions and conditions of that loan, and in consideration of the premises and other good and valuable considerations, the borrowers and lender agree as follows:

(1)  No additional monies are being advanced to the borrowers, and the balance of the loan after this modification will be $214,638.69. The principal indebtedness for recording tax purposes will be increased by $0.00;

(2)  The interest rate will be reduced to Five and One Half (5.50%) Percent;

(3)  The maturity date of the loan will be extended until February 20, 2012; and

(4)  This loan is payable in Twenty-Three (23) equal monthly payments of One Thousand Three Hundred Fifteen & NO/100 ($1,315.00) Dollars each beginning March 20, 2010, with a Twenty-Fourth and final balloon payment consisting of the full amount of the principal and all accrued interest due and payable on February 20, 2012.

The borrower authorizes and directs the lender to take any action necessary to conform the original note, security instruments and other collateral documents to the terms as herein modified, and by execution of this Modification Agreement, accept and confirm liability under those instruments, as modified. The borrower further agrees that the foregoing modification shall in no way affect or otherwise release any collateral held by the lender as security for the note, and agree that the collateral will continue to secure the note to the same extent and in the same manner as if the foregoing modification agreement had not been executed.

DATED this the 11th day of March, 2010.

COFFEE COUNTY BANK

By: _Kenneth C. Kirby_
Kenneth C. Kirby, President

_Anthony Teal_
Anthony Teal

_Oneta K. Neal_
Oneta K. Teal

ACKNOWLEDGEMENT BEFORE NOTARY PUBLIC

STATE OF TENNESSEE          )

COUNTY OF COFFEE            )

Personally appeared before me, the undersigned authority, a notary public in and for the said county and state, the within named Bargainors, with whom I am personally acquainted, and who acknowledged that they executed the within instrument for the purposes therein contained.

Witness my hand and official seal this 11th day of March, 2010.

_____
NOTARY PUBLIC

My Commission Expires: _9-1-2013_

BK/PG: T802/382-383
10001681
2 PGS : AL-MODIFICATION
NANCY BROCK-26005        03/30/2010 - 02:43 PM
VALUE                                    0.00
MORTGAGE TAX                             0.00
TRANSFER TAX                             0.00
RECORDING FEE                           10.00
ARCHIVE FEE                              0.00
DP FEE                                   2.00
REGISTER'S FEE                           0.00
TOTAL AMOUNT                            12.00
STATE OF TENNESSEE, COFFEE COUNTY
ELLEN P. VAUGHN                    CCB(Teal)_000601

E63
48

# MULTIPURPOSE NOTE AND SECURITY AGREEMENT

Borrower, "I", "Me" and "My" Means Each Borrower Below Jointly and Severally   Lender, "You" and "Your" Means The Lender, its Successors and Assigns

| | |
|---|---|
| Officer No. | 09 |
| Customer No. | 7162421 |

ANTHONY D TEAL AND ONETA K TEAL

212 GOTTA MILK LANE
MORRISON, TN 37357

Coffee County Bank
Main Office
P.O. Box 1109
Manchester, TN 37349
(931)-728-1975

| | |
|---|---|
| Loan No. | 166 |
| Renewal of | 166 |
| Loan Date | May 13, 2008 |
| Maturity Date | April 15, 2013 |
| Loan Amount | $215,000.00 |

NOTE: For value received, I promise to pay to you, or any other holder, at the address above, the principal sum of:
Two Hundred Fifteen Thousand and 00/100
Dollars ($ $215,000.00 )
together with interest at the rate of interest as provided below.

☒ Single Advance: I will receive all of this principal sum at one time. No additional advances will be made under this Note.

☐ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this Note. Future principal advances are contemplated.

☐ Conditions: The conditions for future advances are

☐ Open-End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This option is subject to all other conditions and expires no later than

☐ Closed-End Credit: You and I agree that I may borrow up to the maximum amount of principal only one time (and subject to all other conditions).

INTEREST: Interest will accrue on a Actual/365 Day basis. I agree to pay interest on the principal balance owing from time to time as stated below. Each advance made to me under the terms of this Note will earn interest only from the date that I receive the advance. As provided for in this Note, the interest rate will apply to the outstanding principal balance that I owe. The amount of interest charged by you will not exceed the maximum rate of interest allowed by law.

☒ Fixed Rate: I agree to pay interest at the simple rate of 7.990 % per year, from 05/13/2008 until paid in full.

☐ Variable Rate: I agree to pay interest from _____ at the initial simple rate of _____ % per year. This rate may change as stated below.

PAYMENTS: I agree to pay this Note as follows:
THIS NOTE IS DUE ON DEMAND, IF NO DEMAND THEN:
Principal and interest are repayable in 59 equal installment payments, in the amount of $1,700.00 each, commencing on May 15, 2008 and continuing monthly thereafter, and one (1) final payment consisting of the full amount of the principal and all accrued interest remaining due and payable on April 15, 2013.

POST MATURITY INTEREST: Interest will accrue after maturity on the unpaid principal balance of this Note on the same basis as interest accrues prior to maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.

☒ If checked, interest will accrue at the rate of 18.000 % per year on the unpaid principal balance of this note not paid at maturity, including maturity by acceleration. Borrower and Lender agree that any charges for failure to repay principal at maturity are not a penalty or interest, but are intended to compensate the Lender for expenses arising from such delinquency or default.

☒ LATE CHARGE: IF MY PAYMENT IS MORE THAN 15 DAYS LATE, I WILL PAY A LATE CHARGE EQUAL TO 5.000 % OF THE PAYMENT AMOUNT OR $5.00 WHICHEVER IS GREATER.

☐ ADDITIONAL CHARGES:
In addition to accrued interest, I agree to pay the following charges:

and these charges ☐ are ☐ are not included in the Loan Amount.

ADDITIONAL TERMS:

SECURITY: I give you a security interest in the property described below to secure the obligations of this Loan:
All crops/farm products of every kind and description, planted or growing, or to be planted or growing within one year from the date hereof. All accessions, additions, replacements, payments for participation in any state or federal farm programs and substitutions(including rights under Commodity Credit Corporation programs, FSA, payment in kind, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds(including insurance, general intangibles, rents and accounts proceeds); where ever located.   All livestock of every kind and description including but not limited to beef and dairy cattle, branded or unbranded, plus any increase therefrom, and including steers and bulls now owned by debtor. All accessions, additions, replacements, payments for participation in any state or federal farm programs and substitutions(including rights under Commodity Credit Corporation programs, FSA, payment in kind, or any other general intangibles or programs); all records of any kind relating to any of the foregoing; all proceeds(including insurance, general intangibles, rents and accounts proceeds); where ever located. Inclusion of proceeds does not authorize debtor to sell or otherwise dispose of collateral.   All warehouse receipts issued by _____ at their warehouse located at _____, covering debtor's inventory, as well as all inventory of debtor covered by security agreement dated _____ and financing statements filed, all whether now owned or hereafter acquired, and including returned or repossessed goods, as well as any accounts or chattel paper arising from the sale or lease of inventory or conversion of documents of title, and proceeds thereof; where ever located.

☒ If checked, this Note is secured by a separate:
Deed of Trust and UCC

☒ ALL DEBTS - THE ABOVE PROPERTY WILL ALSO SERVE AS SECURITY FOR ALL OF MY PRESENT AND FUTURE DEBTS TO YOU.

THE PURPOSE OF THE LOAN IS: Renew Existing Coffee County Bank Loan # 716242166

CCB(Teal)_000766

**Notice of Furnishing Negative Credit Information**

You may report information about my loan account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report.

**Third Party Agreement**

I own the Property described in the Security section of this Note and Security Agreement and I agree to give you a security interest in that Property. I am not personally liable for payment of this debt. If the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. By signing, I agree to the terms of this Note and Security Agreement and acknowledge receipt of a complete copy of this Loan.

_____ (Seal)          _____ (Seal)
                         Date                                                Date

_____ (Seal)          _____ (Seal)
                         Date                                                Date

**CO-SIGNERS:** As a co-signer I agree that I must pay this note if it is not otherwise paid by Borrower when due. I understand that you may sue any co-signer separately or jointly, and you do not have to notify me if this note is not paid in a timely manner. The obligations of the co-signers executing this Loan shall not be affected by any discharge in bankruptcy granted to one or more Borrowers or co-signers of this Loan.

**Notice to Co-Signer**

You (the Co-Signer) are being asked to guaranty this debt. Think carefully before you do. If the Borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Bank can collect this debt from you without first trying to collect from the Borrower. The Bank can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This Notice is not the contract that makes you liable for the debt.

X _____          X _____
        Co-Signer Signature or Initials                  Co-Signer Signature or Initials

**FTC NOTICE**

IF APPLICABLE, ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**Signatures**

By signing under seal, I agree to the terms of this Loan and also acknowledge receipt of a copy of this Multipurpose Note and Security Agreement.

_____
BORROWER: ANTHONY D TEAL                        Date

_____
BORROWER: ONETA K TEAL                          Date

_____
                                                Date

_____
                                                Date

_____
                                                Date

_____
                                                Date

Case 4:13-cv-00051-CLC-SKL   Document 1-1   Filed 08/01/13   Page 46 of 46   PageID #: 49